RELIABLE MONEY ORDER, INC., a Wisconsin corporation, individually and as the representative of a class of similarly-situated persons, Plaintiff,

v.

McKNIGHT SALES COMPANY, INC., a Pennsylvania corporation, Defendant.

No. 10–C–242.

United States District Court, E.D. Wisconsin.

March 30, 2012.

James M. Smith, Robert M. Hatch, Tod A. Lewis, Phillip A. Bock, Bock & Hatch LLC, Chicago, IL, Brian J. Wanca, Ryan M. Kelly, Anderson Wanca, Rolling Meadows, IL, Charles H. Barr, Attorney at Law, Milwaukee, WI, for Plaintiff.

Albert M. Bower, Eric L. Samore, Michael R. Vescio, Molly A. Arranz, Warren R. Wilkosz, Yesha Sutaria, Smithamundsen LLC, Chicago, IL, Russell M. Ware, Smithamundsen LLC, Milwaukee, WI, for Defendant.

## DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

WILLIAM E. CALLAHAN, JR., United States Magistrate Judge.

### I. PROCEDURAL BACKGROUND

On February 11, 2010, Reliable Money Order, Inc. ("Reliable Money" or "plaintiff") filed this lawsuit in the Milwaukee County Circuit Court, individually and as the representative of a class of similarly-situated persons (collectively "plaintiffs"), against McKnight Sales Company, Inc. ("McKnight" or "defendant") alleging violations of the TCPA and common law conversion. (Def.'s Notice of Removal 5, ECF No. 1.) On March 22, 2010, McKnight removed the action to federal court pursuant to 28 U.S.C. §§ 1331, 1367, 1441, and 1446. (Def.'s Notice of Removal 1, ECF No. 1.)

On July 1, 2011, Reliable Money filed a motion for Rule 23 class certification arguing that it satisfies the requirements of Fed. R.Civ.P. 23(a) and (b)(3). (Pl.'s Mot. 1–3, ECF No. 33.) The motion has been fully briefed and is ready for resolution by this court. For the reasons that follow, the plaintiff's motion for class certification will be granted.

## II. FACTUAL BACKGROUND

On April 6, 2006, or April 7, 2006, Reliable Money and members of the proposed class were faxed an advertisement by Business to Business Solutions ("B2B"), a fax advertising business operated by Caroline Abraham ("Abraham"). (Pl.'s Mem. in Support 3, 7, ECF No. 34.) The fax advertised a "Direct Magazine Service" offered by McKnight. (Pl.'s Mem. in Support 1, ECF No. 34.) Though the issue is disputed, the plaintiff alleges that McKnight authorized B2B to fax thousands of McKnight's form advertisement, which included the language "20% OFF Cover of Magazines" and "30% OFF Cover of Books." (Def.'s Notice of Removal 15.)

Reliable Money does not remember receiving the specific fax at issue in this case. (Def.'s Mem. in Opp'n, Ex. S 26–29, ECF No. 41–19.) However, the plaintiff's attorneys discovered through a similar case involving B2B, *CE Design Ltd. v. Cy's Crabhouse North, Inc.*, No. 07 C 5456, 2010 WL 2365162 (N.D.Ill. June 11, 2010), that B2B's faxing campaigns created numerous violations of the Telephone Consumer Protection Act ("TCPA") (as amended by the Junk Fax Prevention Act of 2005), 47 U.S.C. § 227. The plaintiff's attorneys used the information disclosed by B2B to contact potential class action plaintiffs.

Reliable Money received an advertisement letter from the plaintiff's attorneys describing "junk fax" violations and informing the plaintiff that it may be entitled to damages. (Def.'s Resp. to Pl.'s Supp. Br., Ex. O, ECF No. 52–16.) Reliable Money contacted the plaintiff's attorneys in response to the letter. (Pl.'s Supp. Br., Ex. EE 54, ECF No. 49–31.) Thereafter, the plaintiff initiated the present action.

## III. DISCUSSION

Generally, only individual named parties may conduct litigation. *Gen. Tele. Co. of Southwest v. Falcon*, 457 U.S. 147, 155, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). However, a class action is appropriate in situations where the "issues involved are common to the class as a whole" and when they "turn on questions of law applicable in the same manner to each member of the class." *Califano v. Yamasaki*, 442 U.S. 682, 701, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979). Litigating such cases as a class, as opposed to individually, saves the resources of the courts and the parties by deciding similar issues that affect all class members. *Id.*

■ To proceed as a class, the plaintiff must first satisfy two implicit requirements: (1) the representative plaintiff must have standing to sue and (2) the class must be definable. *Bzdawka v. Milwaukee Cnty.*, 238 F.R.D. 469, 472 (E.D.Wis.2006). If the plaintiff can meet the two implicit requirements, then the plaintiff must also demonstrate that the class meets the prerequisites described in Rule 23 of the Federal Rules of Civil Procedure. *Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir.1992).

The defendant does not dispute that the proposed class meets the numerosity, commonality, and typicality requirements of Rule 23. However, the defendant asserts that the named plaintiff and class counsel will not adequately protect the interests of the class as a whole. Additionally, McKnight argues that the "class action is not the superior method of adjudication" of the plaintiff's claims and that "the definition proposed by [the] plaintiff is unworkable in light of the statute." (Def.'s Mem. in Opp'n 19, 21, ECF No. 41.) Although the defendant only takes issue with a few requirements under Rule 23, it is the court's responsibility to ensure that all the requirements are met. *See Falcon*, 457 U.S. at 161, 102 S.Ct. 2364 (a class may only be certified "if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied."). I will therefore address each requirement below.

### A. Implicit Requirements

In addition to the express requirements of Rule 23, courts in this circuit have recognized two implicit requirements that the plaintiffs must satisfy. *Bzdawka*, 238 F.R.D. at 472. First, the named representatives must have standing to bring the suit. *Blihovde v. St. Croix County, Wis.*, 219 F.R.D. 607, 614 (W.D.Wis.2003). This means that the named

plaintiffs "must be members of the class they propose to represent." *Id.* Second, the proposed class definition must be precise, objective, and presently ascertainable. *Kasten v. Saint–Gobain Performance Plastics Corp.,* 556 F.Supp.2d 941, 958 (W.D.Wis.2008).

As discussed above, in order to have standing for purposes of a class action, the named representative must be a member of the class that he, she, or it purports to represent. Here, the record demonstrates that B2B faxed an advertisement to Reliable Money and 3,313 other persons, allegedly on behalf of McKnight. (Pl.'s Mem. in Support 1, ECF No. 34.) Reliable Money therefore fits into the class definition provided in the plaintiff's complaint.

The defendant argues that Reliable Money does not have standing because "Reliable Money was completely unaware of ever having allegedly received a facsimile . . . advertisement from McKnight Sales Company, Inc." (Def.'s Mem. Opp'n 1, ECF No. 41.) Several courts have found that the TCPA does not require knowledge of receipt, only that a fax was successfully transmitted. *See CE Design Ltd. v. Cy's Crabhouse North, Inc.,* 259 F.R.D. 135, 142 (N.D.Ill.2009) (finding that the TCPA "does not specifically require proof of receipt," but if it does, the plaintiff presented circumstantial proof of receipt by providing fax logs kept by B2B); *Bridgeview Health Care Ctr. Ltd. v. Clark,* No. 09–CV–05601, 2011 WL 4585028, at *3 (N.D.Ill. Sept. 30, 2011) ("Persuasive authority within the Seventh Circuit holds that given the plain reading and statutory intent of the TCPA, a violation of the TCPA simply requires that an unsolicited fax be sent, not that Plaintiff must prove that it was received."); *Critchfield Physical Therapy v. Taranto Grp., Inc.,* 293 Kan. 285, 263 P.3d 767, 778 (2011) ("The TCPA specifically prohibits using electronic devices 'to send' unsolicited advertisements. 47 U.S.C. § 227(b)(1)(C). The statute creates no requirement that a transmission be received . . . .").

Here, the plaintiff has presented fax logs indicating that 3,314 faxes were successfully transmitted by B2B on April 6, 2006, and April 7, 2006. (ECF No. 34–4.) On April 6, 2006, B2B made 2,215 attempts to send faxes, and 967 faxes were successfully transmitted. (Biggerstaff Report 15, ECF No. 34–4.) On April 7, 2006, B2B made 4,400 attempts to send faxes and 2,347 faxes were successfully transmitted. (Biggerstaff Report 21, ECF No. 34–4.) Additionally, the fax log lists all 3,314 fax numbers to which the defendant's form fax advertisement were successfully transmitted. (Biggerstaff Report 23–37, ECF No. 34–4.) The fax log indicates that B2B successfully transmitted a fax to Reliable Money on April 7, 2006. (Biggerstaff Report 19, ECF No. 34–4.)

The evidence demonstrates that Reliable Money is a member of the class, and the fact that Reliable Money does not personally recall receiving the "junk fax" is inconsequential because personal knowledge of receipt is not necessary under the TCPA. I therefore find that Reliable Money has standing to pursue its claims.

To satisfy the second implicit requirement, the plaintiff need only propose a class that is "precise enough to enable the court to determine whether at any given time a particular individual is or is not a member of the class." *Bzdawka,* 238 F.R.D. at 474 (citing *Alliance to End Repression v. Rochford,* 565 F.2d 975, 977 (7th Cir.1977)). "[A] class is sufficiently definite if its members can be ascertained by reference to objective criteria and may be defined by reference to defendants' conduct." *Hinman v. M and M Rental Ctr., Inc.,* 545 F.Supp.2d 802, 806 (N.D.Ill.2008).

The plaintiff defines the class as follows:

All persons who were successfully sent a facsimile on April 6, 2006, or April 7, 2006, offering "20% OFF Cover of Magazines" and "30% OFF Cover of Books" from MSC of Pittsburgh, PA.

(Pl.'s Mem. in Support 10, ECF No. 34.)

The proposed class in this case clearly delineates who does and does not fit within the parameters of this class action. The court can easily and objectively determine whether a particular individual is a member of the class. The plaintiff's class definition is

therefore sufficient.[1]

## B. Rule 23 Requirements

Rule 23 of the Federal Rules of Civil Procedure provides the requirements for certifying a class action. Initially, an individual litigant must establish four prerequisites under Rule 23(a): numerosity, commonality, typicality, and fair and adequate representation. *Rosario*, 963 F.2d at 1017. "Once these four prerequisites are satisfied, the potential class must also satisfy at least one provision of Rule 23(b)." *Id.*

The district court has broad discretion in determining whether certification of a class action lawsuit is appropriate under Rule 23. *Olson v. Brown*, 594 F.3d 577, 584 (7th Cir. 2010). The court need not accept allegations in the complaint as true, but should instead make the factual and legal inquiries necessary to ensure that the prerequisites and requirements of Rule 23 are satisfied. *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676–77 (7th Cir.2001). "[C]ertification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Wal–Mart Stores, Inc. v. Dukes*, —— U.S. ——, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011) (quoting *Falcon*, 457 U.S. at 161, 102 S.Ct. 2364). Although as a general matter, a court should not address the merits of the ultimate issues in the case, "some overlap with the merits of the plaintiff's underlying claim" may be inevitable during the "rigorous analysis" required by Rule 23. *Dukes*, 131 S.Ct. at 2551.

The plaintiff claims that the proposed class meets the four prerequisites of Rule 23(a) and also, that the proposed class meets the additional requirements set forth under subsection (b)(3). The defendant argues, however, that the plaintiff and the plaintiff's counsel are inadequate representatives, thereby failing to satisfy Rule 23(a)(4). Additionally, the defendant argues that a class action is not a superior method of adjudicating the plaintiff's claims, as required under Rule

23(b)(3). The court addresses each of the prerequisites and requirements for class certification below.

### 1. Numerosity

██ Rule 23(a)(1) of the Federal Rules of Civil Procedure provides for certification if a class is "so numerous that joinder of all members is impracticable." Generally, joinder is considered impracticable for classes numbering at least 40 persons. *Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n. 9 (7th Cir.1969). A plaintiff need not specify an exact number of potential class members to prove numerosity. *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir.1989). However, "a conclusory allegation that a class is so numerous that joinder is impracticable is not sufficient to meet the requirements of Rule 23(a)(1)." *Valentino v. Howlett*, 528 F.2d 975, 978 (7th Cir.1976).

██ Here, the plaintiff has established that "McKnight's form advertisement was successfully sent to 3,314 different fax numbers. (Pls.' Mem. in Support 10.) Joining 3,314 persons to this action is impracticable. I therefore find that the plaintiff has met the numerosity requirement of Rule 23(a).

### 2. Commonality

██ "Commonality requires the plaintiff to demonstrate that class members 'have suffered the same injury,'" not "merely that they have all suffered a violation of the same provision of law." *Dukes*, 131 S.Ct. at 2551 (quoting *Falcon*, 457 U.S. at 157, 102 S.Ct. 2364). Class members' "claims must depend upon a common contention," which is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* " 'What matters to class certification ... is not the raising of common questions—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.' " *Id.*

---

1. The defendant argues that the class definition should be altered to indicate that a potential class member is someone who actually "received" a fax from the defendant, not merely someone to whom the fax was "successfully sent." However, as previously stated, the plaintiff need only establish that a fax was successfully sent to establish a violation of the TCPA.

(quoting Nagareda, *Class Certification in the Age of Aggregate Proof,* 84 N.Y.U. L.Rev. 97, 132 (2009)) (emphasis original).

■ The class in this action asserts the same injury: faxes sent to the potential class members in violation of the TCPA. The events surrounding the transmission of each of the faxes are identical. Additionally, determining whether the defendant violated the TCPA in relation to one plaintiff will likely answer whether the defendant violated the TCPA with regard to the remaining 3,313 members of the class. There is a possibility of individual defenses, such as a prior existing business relationship or prior express permission. But generally, the answer to the common question will resolve the class claims. Thus, the court finds that the plaintiff has established commonality.

### 3. Typicality

■ A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely–Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir.1983) (quoting H. Newberg, *Class Actions,* § 1115(b) at 185 (1977)). Although "[t]he typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members," the court should direct its focus on whether "the named representatives' claims have the same essential characteristics as the claims of the class at large." *Id.*

■ The plaintiff alleges that potential class members were sent a form fax advertisement from McKnight on April 6, 2006, or April 7, 2006. The class members assert that McKnight's form fax violated the TCPA and resulted in conversion of their property. Based on the record, Reliable Money's claims "have the same essential characteristics as the claims of the class at large." The court therefore finds that the named plaintiff meets the typicality requirement of Rule 23(a).

### 4. Adequacy of the Class Representative

■ The plaintiff must demonstrate that it "will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). The requirement that the class representative be adequate is relatively modest and will generally be satisfied if the plaintiff does not have interests that are antagonistic to those of the other class members. *Shurland v. Bacci Cafe & Pizzeria on Ogden Inc.,* 259 F.R.D. 151, 159 (N.D.Ill.2009) (citing *Uhl v. Thoroughbred Tech. and Telecomm., Inc.,* 309 F.3d 978, 985 (7th Cir.2002)). "[N]amed plaintiffs who are subject to a defense that would not defeat unnamed class members are not adequate class representatives" as required for class certification. *Randall v. Rolls–Royce Corp.,* 637 F.3d 818, 824 (7th Cir.2011) (citing *CE Design Ltd. v. King Architectural Metals, Inc.,* 637 F.3d 721, 725–28 (7th Cir.2011)).

For example, in *King Architectural Metals,* the Court of Appeals reversed and remanded the district court's decision to certify the class due to the potential inadequacy of the named plaintiff. 637 F.3d 721. The Seventh Circuit remanded the case to the district court to determine whether CE Design was an adequate representative because CE Design may have "invited or permitted the faxed advertisements," which is a defense to a TCPA violation. *Id.* at 725. The Court stated that "CE [Design] cannot be an adequate representative of the class of unconsenting recipients of King Architectural Metals' faxes if it is subject to a defense that couldn't be sustained against other class members." *Id.*

The defendant argues that Reliable Money is an inadequate representative for the class because "Reliable Money has no independent knowledge of the allegations in its Complaint." (Def.'s Mem. in Opp'n 12, ECF No. 41.) Specifically, McKnight argues that the plaintiff does not have any records relating to the subject fax, or any knowledge that it actually received the fax, and is "merely a pawn of the class lawyers." (Def.'s Mem. in Opp'n 12, ECF No. 41.)

The defendant cites *In re AEP ERISA Litig.,* No. C2–03–67, 2008 WL 4210352, at *5 (S.D.Ohio Sept. 8, 2008), for the proposition

that "[a]lthough the named plaintiff's burden in prosecuting a class action is 'quite low,' the 'named plaintiff's involvement in the case [must show] that he or she is not merely a pawn of the class lawyers.'" However, the court also stated the following:

It bears repeating that the burden on the named plaintiff to establish that he or she is an adequate class representative is not high.... [C]lass representatives need to be more than mere figureheads who lend their names to pleadings, but can be far less than hands-on decisionmakers propelling the litigation forward.... Suffice it say that even under the most lenient standard, [the named plaintiff's] complete absence from this case during most of its pendency is simply not enough for him to qualify as an adequate class representative. With even a minimal amount of consultation with his lawyer, he likely would have passed muster. But that did not happen.

*Id.*

■■■ The court finds that Reliable Money is more than a mere "figurehead." Reliable Money contacted class counsel, after receiving counsel's advertisement, seeking retribution for the significant number of "junk faxes" that it had received. (Pl.'s Supp. Br. Re: Adequacy of Counsel, Ex. EE, 54:11–22, ECF No. 49–31.) Additionally, Reliable Money, through its current owner, has given deposition testimony regarding the plaintiff's experiences related to this case. (Def.'s Mem. in Opp'n, Ex. S, ECF No. 41–19.) Thus, based on the low standard and the evidence of Reliable Money's participation in this lawsuit, the court finds that Reliable Money is not a mere "figurehead" and therefore qualifies as an adequate class representative.

Additionally, there is no evidence that Reliable Money's interests and claims do not align with the members of the proposed class. There is no allegation that Reliable Money may have invited or permitted the faxed advertisements, or that Reliable Money had an existing business relationship with McKnight prior to receiving the faxed advertisement. Thus, from the information presently available, Reliable Money is not subject to a defense that would make it unsuitable as class representative under *King Architectural Metals*. Instead, the plaintiff's claims are aligned with the potential class members, who are defined as being persons who were successfully sent the same fax. In addition, like Reliable Money, the potential class members likely have no personal knowledge of whether the "junk fax" at issue in this case was successfully sent.

The record demonstrates that Reliable Money's interests and claims are aligned with those of the potential class members. I therefore find that the named plaintiff is an adequate class representative for purposes of Rule 23.

### 5. Adequacy of Class Counsel

Under Rule 23, the court must consider:

(i) the work counsel has done in identifying or investigating potential claims in the action;

(ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii) counsel's knowledge of the applicable law; and

(iv) the resources that counsel will commit to representing the class.

Fed.R.Civ.P. 23(g)(1)(A).

■■■ Along with the statutory requirements, the Seventh Circuit has provided additional guidance to determine if class counsel is adequate. "Class counsel owe a fiduciary obligation of particular significance to their clients when the class members are consumers." *Creative Montessori Learning Centers v. Ashford Gear LLC*, 662 F.3d 913, 917 (7th Cir.2011). "Misconduct by class counsel that creates a serious doubt that counsel will represent the class loyally requires denial of class certification." *Id.* at 918. "A serious or, equivalently, a 'major' ethical violation should place on class counsel a heavy burden of showing that they are adequate representatives of the class." *Id.* at 919 (internal citation omitted).

In its memorandum in opposition to the plaintiff's motion for class certification, the defendant argues that class counsel is inade-

quate for two reasons: (1) the plaintiff's counsel used information obtained pursuant to a promise of confidentiality to file and prosecute this action and (2) the plaintiff's counsel sent misleading solicitation letters in an attempt to find a plaintiff to act as the class representative. (Def.'s Mem. in Opp'n 13, ECF No. 41.)

The alleged misconduct in this case occurred in the context of another case, *CE Design Ltd. v. Cy's Crabhouse North, Inc.,* No. 07 C 5456, 2010 WL 2365162 (N.D.Ill. June 11, 2010).[2] In *Cy's Crabhouse,* Judge Kennelly fully addressed the potentially confidential and protected information that Abraham disclosed to class counsel and the circumstances surrounding its disclosure. *Id.* at *1–10. The court stated that "[i]t is undisputed that Kelly[3] represented to Abraham that the materials she turned over would be treated as confidential and that he referred specifically to a protective order" and that class counsel "believed, at one point, that the information on the disk [Abraham's son] produced at his deposition *was* confidential." *Id.* at *6 (emphasis original). The court decided that the information disclosed by B2B should be treated as "confidential" and should not be used "for *any* purpose other than the defense or prosecution of this action." *Id.* at *9 (emphasis original). The court also stated that it was "troubled by the conduct of CE Design's counsel" and decided to hold a hearing to address class counsel's use of the B2B materials to initiate other lawsuits.

Prior to the hearing, "the parties ... submitted voluminous filings" and the court determined that the filings presented "sufficient information for the court to rule without holding a ... hearing." *CE Design Ltd. v. Cy's Crabhouse North, Inc.,* No. 07 C 5456, 2010 WL 3327876 (N.D.Ill. Aug. 23, 2010). Judge Kennelly concluded that "neither Abraham nor [the defendant] has demonstrated good cause for keeping [the] materials confidential" and therefore vacated the earlier ruling designating the B2B materials as confidential. *Id.* at *3. Additional-

ly, Judge Kennelly stated that "[t]aking all the circumstances into account, there is no basis to justify disqualification of class counsel or decertification of the class on the grounds cited by Cy's Crabhouse." *Id.* at *7.

After briefing of the plaintiff's motion for class certification in the instant case was completed, the Seventh Circuit issued its opinion in *Ashford Gear,* 662 F.3d 913. *Ashford Gear* involved the class certification of alleged TCPA violations and also involved the same class counsel and defense counsel as the instant case. *Id.* at 914–15. The appeal focused on the same alleged misconduct of class counsel as was involved in *Cy's Crabhouse.* The district court in *Ashford Gear* certified the class, despite finding that "there had indeed been misconduct by the lawyers" in two forms:

> obtaining material from Abraham's files on the basis of a promise of confidentiality that concealed the purpose of obtaining the material, a purpose inconsistent with maintaining confidentiality and likely to destroy Abraham's business; and implying in the letter to [the representative plaintiff] that there already was a certified class to which the [plaintiff] belonged. (This second allegation would constitute misconduct not because the lawyers communicated with a potential class action plaintiff personally, but because the communication was misleading.)

*Id.* at 917. The district court in *Ashford Gear* stated that " 'only the most egregious misconduct' by class 13 counsel" could " 'ever arguably justify denial of class status,' " and instead ruled that "the proper sanction for these wrongful acts was discipline by the bar authorities, and that the acts cast no shadow on the adequacy of class counsel to represent the class." *Id.*

The Seventh Circuit held that the district court applied the wrong standard and should have instead determined whether "[m]isconduct by class counsel ... create[d] a serious doubt that counsel [would] represent the

---

2. This is the same alleged misconduct that was addressed in *Ashford Gear.*

3. Kelly refers to Attorney Ryan M. Kelly of Anderson + Wanca, who is also the plaintiff's attorney in this case.

class loyally." *Ashford Gear*, 662 F.3d at 918 (citing *Culver v. City of Milwaukee*, 277 F.3d 908, 913 (7th Cir.2002)). The Court also evaluated the evidence itself and stated that "class counsel have demonstrated a lack of integrity that casts serious doubt on their trustworthiness as representatives of the class" and that "[t]here is no basis for confidence that they would prosecute the case in the interest of the class, of which they are the fiduciaries, rather than just in their interest as lawyers who if successful will obtain a share of any judgment or settlement as compensation for their efforts." *Id.* at 917. The Seventh Circuit therefore vacated and remanded the case "with directions that the district court, applying the *Culver* standard rather than the 'egregious misconduct' standard, re-evaluate the gravity of class counsel's misconduct and its implications for the likelihood that class counsel will adequately represent the class." *Id.* at 919.

■ This court, applying the *Culver* standard finds, based on the record presented by the parties in this case,[4] that class counsel is adequate under Rule 23. Like Judge Kennelly, I find that class counsel's behavior "was not entirely on the up and up." *Cy's Crabhouse*, 2010 WL 2365162, at *6. However, such behavior does not create "serious doubt that counsel will represent the class loyally." *Ashford Gear*, 662 F.3d at 918. Although class counsel received information from B2B with a promise of a protective order, the court in *Cy's Crabhouse* ultimately found that the information was not protected because good cause did not exist to justify keeping the materials confidential.

Whatever this court's opinion of counsel's behavior might be, such behavior does not create a serious doubt that class counsel will represent the class loyally. The plaintiff's attorneys did not breach a promise of confidentiality with the members of the class in *Cy's Crabhouse*, or with the members of the

4. The court notes that the plaintiff in *Ashford Gear* "did not respond to Ashford Gear's petition in the Seventh Circuit because it believed the sole issue raised by the petition for leave to appeal under Fed.R.Civ.P. 23(f) was whether the case was appropriate for immediate, interlocutory appellate review." (Pl.'s Supp. Br. 2, n. 1, ECF No. 49.) The plaintiff's attorneys state that

class in *Ashford Gear*, or with the potential members of this class. Instead, the breach was with a third party holding information regarding the illegal behavior of potential defendants. *See The Siding and Insulation Co. v. Beachwood Hair Clinic, Inc.*, 279 F.R.D. 442, 445 (N.D.Ohio 2012) (court found attorneys from Bock & Hatch and Anderson + Wanca adequate after reviewing prior cases of alleged impropriety and stating that the defendant had not "allege[d] improper conduct in this case."). Although the court does not approve of or condone the actions taken by the attorneys, such conduct does not demonstrate that they will not represent the class loyally. Additionally, this case is unlike those cited by the defendant in which class counsel may have engaged in behavior contrary to class members' interests. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 968 (9th Cir.2009) (simultaneous representation of class members with conflicting interests could affect counsel's ability to adequately represent the class). In sum, class counsel's behavior does not cause this court to seriously doubt that class counsel will represent the class loyally.

■ Additionally, the letter sent to potential class members was not as misleading as the letter sent in *Ashford Gear*. The defendant argues that, like the letter in *Ashford Gear*, the language in the letter sent to Reliable Money is misleading because it implies that "Reliable Money is a member of a class that has been certified in an already existing lawsuit, and its participation could result in the potential compensation of $1,500." (Def.'s Mem. in Opp'n 15–16, ECF No. 41.)

The letter at issue in this case was addressed to Fast & Friendly Grocery and stated the following:

Re: *Junk Faxes*

To Whom It May Concern:

"the case is now back before Judge Gettleman, and Creative Montessori School[ ] will submit a more complete record clearly showing that Caroline Abraham did not rely upon any promise from Anderson + Wanca, and that the firm did not mislead the plaintiff." (Pl.'s Supp. Br. 2–3, n. 1, ECF No. 49.)

My law firm pursues class action lawsuits against companies that send junk faxes in Illinois and elsewhere. Federal law prohibits advertising faxes sent without first obtaining the recipient's prior express permission or invitation. Through litigation, we enforce this federal law to seek compensation for the recipients of junk faxes and to stop future junk faxes.

During our investigation, we have determined that you are likely to be a class member in one or more of the cases we are pursuing. You might not remember receiving the junk faxes, but if the lawsuit were successful, you would receive compensation (from $500 to $1,500) for each junk fax sent to you.

(Def.'s Resp. to Pl.'s Supp. Br., Ex. O, ECF No. 52–16.) The letter provided the attorney's contact information and contained the words "Advertising Material" at the bottom of the letter. (Def.'s Resp. to Pl.'s Supp. Br., Ex. O, ECF No. 52–16.)

First, the letter was not addressed to Reliable Money. Instead, it was addressed to Fast & Friendly Grocery. It is therefore unlikely that Reliable Money was misled into believing that it was a member of an already existing class. Second, the letter clearly states "Advertising Material" at the bottom, making any possible deception even more unlikely. I therefore find that the letter, in this case, was not misleading.[5]

When all is said and done, I must be mindful of the purpose of the court's analysis under Rule 23(a)(4). The purpose is to ensure that the attorneys representing the class will adequately represent those class members who are not actively involved in the case, or may not know that a case exists at all. *See Greenfield v. Villager Indus., Inc.*, 483 F.2d 824, 832 (3d Cir.1973) (the district court must act "as the guardian of the rights of the absentee[ ] [class members]. . . ."). Although counsel's behavior may leave something to be desired, I nevertheless find that counsel's behavior does not affect its ability to vigorously pursue the class members' claims. I also find that denying class certification on possible ethical violations occurring in the context of a different case is an unnecessarily harsh remedy that would be a disservice to the potential class members in this case.

Based on the discussion above, the court finds that class counsel's behavior does not create a "serious doubt that counsel will represent the class loyally." *Ashford Gear*, 662 F.3d at 918. Indeed, class counsel are very experienced in litigating TCPA claims. "They have been litigating TCPA claims since 2003 and have prosecuted dozens of such cases to successful resolution, including many class-wide settlements." (Pl.'s Mem. in Support 13, ECF No. 34.) Additionally, plaintiff's counsel state that they "will continue to commit adequate resources, both staffing and monetary, to ensure that the Class is properly represented." (Pl.'s Mem. in Support 13–14, ECF 34.) Thus, I find that the plaintiff's counsel will "fairly and adequately represent the interests" of the proposed class.[6]

### 6. *Predominance and Superiority*

The plaintiff seeks class certification pursuant to Rule 23(b)(3). Subsection (b)(3) requires the plaintiff to show that (1) "questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "a class

---

**5.** The defendant also suggests that the letter class counsel sent to Reliable Money and potentially hundreds or thousands of other potential plaintiffs may have violated professional responsibility provisions in various states that require such letter to be registered prior to being sent. (Def.'s Resp. to Pl.'s Supp. Br. 21, ECF No. 52.) However, in this court's opinion, failure to register a solicitation letter is insufficient to find that counsel will not adequately protect the interests of the class.

**6.** The defendant mentions briefly that class counsel submitted a $5,000 check to Abraham's attorney, Eric Rubin, which Attorney Rubin returned to class counsel uncashed. (Def.'s Resp. to Pl.'s Supp. Br. 12, ECF No. 52.) Judge Kennelly reviewed the circumstances surrounding the check and found no misconduct, reasoning instead that the attempted payment was most likely related to Abraham's discovery costs, which class counsel had paid to Abraham in the past. *Cy's Crabhouse*, 2010 WL 3327876, at *7. He ultimately held that there was "no basis to justify disqualification of class counsel or decertification of the class."

action is superior to other available methods for fairly and efficiently adjudicating the controversy." Issues relevant to determining predominance and superiority are:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against members of the class;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed.R.Civ.P. 23(b)(3).

The plaintiff states that "[i]n this case, no individualized issues are present. Plaintiff's claim is identical to the claims of the other class members. Because each class member is entitled to statutory damages in the same amount, there will be no need for an individualized inquiry on the question of damages." (Pl.'s Mem. in Support 14, ECF No. 34.)

■ The court agrees that common issues predominate over any individual issues that may arise. The facts determining the defendant's liability relate to the transmission of the faxes and do not relate to the individual recipients. The individual issues that the court foresees relate to the need to determine whether some of the recipients gave permission to receive the faxes prior to transmission or whether individual plaintiffs had an established business relationship with the defendant before receiving the fax at issue in this case. However, such issues are minor and can certainly be handled within the framework of a class action. The court therefore finds that the proposed class meets the predominance requirement under Rule 23.

Superiority, however, is a more complex and contested issue. The plaintiff argues that proceeding as a class "is superior to thousands of individual actions." (Pl.'s Reply 11, ECF No. 44.) The plaintiff also argues that "[a] class action is the *only* available method of adjudication that would be fair and efficient" because the small amount of statutory damages per class member and the requirement that "[b]usinesses appear in court only through a licensed attorney," "would result in a 'negative value' for each plaintiff representing itself." (Pl.'s Mem. in Support 16, ECF No. 34.)

The defendant argues, however, that a class action is an inferior method of adjudication compared to other available options. Specifically, the defendant points to congressional intent that such claims be pursued in small claims court. (Def.'s Mem. in Opp'n 20, ECF No. 41.) McKnight also argues that the plaintiff's counsel's "breach of a clear promise of confidentiality" or transmission of "countless misleading and factually inaccurate solicitation letters in an effort to find [a] potential class representative" demonstrates that certifying this case as a class action is not superior to individual litigation. (Def.'s Mem. in Opp'n 19–20, ECF No. 41.)

Several courts have addressed whether a class action is a superior method for adjudicating TCPA claims and have reached different results. For example, in *Local Baking Prods., Inc. v. Kosher Bagel Munch, Inc.*, 421 N.J.Super. 268, 23 A.3d 469, 473–77 (N.J.Super.Ct.App.Div.2011), the court found that litigating the plaintiff's TCPA claim as a class was an inferior method of adjudication because a plaintiff could and should litigate his or her claim in small claims court. The court stated that, in New Jersey, a plaintiff could easily and efficiently enforce the TCPA against any violators by filing a claim in small claims court, and could probably do so in a more cost-effective manner. *Id.* at 474. The court therefore found that proceeding as a class would be an inferior method of adjudication when compared to the plaintiff's ability to proceed *pro se* in small claims court. *Id.* at 476–77. *See also Forman v. Data Transfer, Inc.*, 164 F.R.D. 400, 405 (E.D.Pa.1995) ("A class action would be inconsistent with the specific and personal remedy provided by Congress to address the minor nuisance of unsolicited facsimile advertisements."); *CE Design, Ltd. v. Mortgage Exchange, Inc.*, 375 Ill.App.3d 379, 313 Ill. Dec. 667, 872 N.E.2d 1056, 1058 (2007) (noting the trial court's holding that "a class action was not an appropriate method for the

fair and efficient adjudication of the controversy, because when Congress enacted the the TCPA, it envisioned individual, small claims litigation, not private class actions with potential recoveries in the millions of dollars.").

However, many courts have found class actions to be an appropriate method of adjudication of TCPA violations. In *Green v. Serv. Master On Location Servs. Corp.*, No. 07 C 4705, 2009 WL 1810769, at *3 (N.D.Ill. June 22, 2009), the defendant argued that "Congress did not intend that the TCPA serve as a vehicle to bring class complaints and that the available $500 to $1500 penalty is both sufficient to encourage individual plaintiffs to bring suit in small claims courts and to deter conduct of theoretical defendants." The court rejected this argument stating that "Congress did not make a clear expression of an intent to preclude application of Fed.R.Civ.P. 23 to the TCPA, and the Court will not read one into the statute." *Id.* The court then went on to find that the superiority requirement of Rule 23(b) was satisfied, stating that "[r]esolution of the issues on a classwide basis, rather than thousands (or zero) individual lawsuits is an efficient use of judicial resources." *Id. See also Hinman v. M and M Rental Center, Inc.*, 545 F.Supp.2d 802, 807 (N.D.Ill.2008) ("[R]esolution of the issues on a classwide basis, rather than in thousands of individual lawsuits (which in fact may never be brought because of their relatively small individual value), would be an efficient use of both judicial and party resources.").

I find that proceeding as a class is superior to litigation of the issues by individuals. Specifically, if the defendant's liability is proven, then those persons to whom the "junk faxes" were transmitted are entitled to statutory damages of at least $500 per transmission. Providing evidence of the defendant's alleged violation of the TCPA, as it relates to this specific class, would be duplicated in each individual lawsuit if the action were not allowed to proceed as a class. This runs counter to the objective of class actions to provide efficiency for the parties and the courts.

Additionally, the court appreciates the congressional intent to provide a simple statutory scheme that allows for individuals to prosecute TCPA violations in small claims courts without the assistance of attorneys. However, like the court in *Green,* I am persuaded that if Congress intended to preclude Rule 23's application to TCPA claims, then express language to that effect would have been included in 47 U.S.C. § 227 (which it was not). I therefore find that allowing the lawsuit to proceed as a class action is superior to litigation by each individual plaintiff.

## IV. CONCLUSION

For the reasons stated above, the court will grant the plaintiff's motion for Rule 23 class certification.

**NOW THEREFORE IT IS ORDERED** that the plaintiffs' motion for Rule 23 class certification be and hereby is **GRANTED;**

**IT IS FURTHER ORDERED** that the following class is certified:

All persons who were successfully sent a facsimile on April 6, 2006, or April 7, 2006, offering "20% OFF Cover of Magazines" and "30% OFF Cover of Books" from MSC of Pittsburgh, PA.

**IT IS FURTHER ORDERED** that Reliable Money Order, Inc. be and hereby is appointed as class representative;

**IT IS FURTHER ORDERED** that plaintiff's counsel be and hereby is appointed as class counsel;

**IT IS FURTHER ORDERED** that a status conference will be conducted on *April 19, 2012, at 9:30 a.m.,* in Room 242 of the U.S. Courthouse, 517 E. Wisconsin Avenue, Milwaukee, Wisconsin 53202, to discuss with counsel the steps that need to be taken to further process this case to final resolution and judgment.