In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-8020

CREATIVE MONTESSORI LEARNING CENTERS,
    on its own behalf and that of a class,

*Plaintiff-Respondent,*

*v.*

ASHFORD GEAR LLC,

*Defendant-Petitioner.*

Petition for Permission to Appeal from the
United States District Court for the
Northern District of Illinois, Eastern Division.
No. 09 C 3963—**Robert W. Gettleman**, *Judge.*

SUBMITTED SEPTEMBER 9, 2011—DECIDED NOVEMBER 22, 2011

Before EASTERBROOK, *Chief Judge*, and CUDAHY and
POSNER, *Circuit Judges*.

POSNER, *Circuit Judge*. The defendant has asked us
for permission to appeal from the district judge's certi-
fication of a class in a suit under the Telephone Con-
sumer Protection Act (as amended by the Junk Fax Pre-
vention Act of 2005), 47 U.S.C. § 227. See Fed. R. Civ.

P. 23(f). The Act imposes, on anyone who sends an unsolic-ited fax advertisement, statutory damages of $500 per fax, which can be trebled if the court finds that the viola-tion was willful or knowing. 47 U.S.C. §§ 227(b)(1)(C), (b)(3). Such "junk faxes" consume the recipient's paper and ink without his consent and are thus a source of justified though usually minor irritation to recipients not interested in the advertised product or service. *Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 639 (4th Cir. 2005). The named plaintiff in this case is complaining about two one-page faxes that, as we'll see, it may never even have received. Anyway, the statute, with its draconian penalties for multiple faxes, is what it is.

The plaintiff hasn't responded to the petition for leave to appeal even though the petition presents issues of class action practice that deserve our consideration. The petition presents two questions. The first is whether "only the most egregious misconduct" by the law firm repre-senting the class "could ever arguably justify denial of class status"—the unattainable standard that the district judge invoked to reject the firm's misconduct as a ground for denying class certification. The second question, which bears more directly on the specifics of this case, is whether the judge gave proper weight to the firm's misleading statements and the risk that the firm is in this case purely for itself and not for the bene-fits that the suit if successful might confer on the class.

The resolution of these issues cannot feasibly be post-poned to an appeal from a final judgment, as there is

unlikely to be an effectively appealable judgment. Class actions, unless dismissed at an early stage, are typically settled rather than litigated to judgment. The settlement must be approved by the district court, and objectors can appeal the settlement to the court of appeals, but it is unlikely that the particular issue raised in this petition to appeal would be raised in an appeal from approval of a settlement.

Certification as a class action can "coerce the defendant into settling on highly disadvantageous terms, regardless of the merits of the suit," and in this case is "highly likely to because of the magnitude of the potential damages." 1998 Committee Notes to Fed. R. Civ. P. 23(f); see also *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 723 (7th Cir. 2011). As explained in *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 675 (7th Cir. 2001) (citation omitted), "the class certification turns a $200,000 dispute (the amount that Szabo claims as damages) into a $200 million dispute. Such a claim puts a bet-your-company decision to Bridgeport's managers and may induce a substantial settlement even if the customers' position is weak. This is a prime occasion for the use of Rule 23(f), not only because of the pressure that class certification places on the defendant but also because the ensuing settlement prevents resolution of the underlying issues. Accepting an appeal in a big-stakes case is especially appropriate when the district court's decision is problematic, as it is here." See also *West v. Prudential Securities, Inc.*, 282 F.3d 935, 937 (7th Cir. 2002) ("the effect of a class certification in inducing settlement to curtail the risk of large awards provides a powerful

reason to take an interlocutory appeal"); *Blair v. Equifax Check Services, Inc.*, 181 F.3d 832, 834 (7th Cir. 1999) ("this interaction of procedure with the merits justifies an earlier appellate look. By the end of the case it will be too late—if indeed the case has an ending that is subject to appellate review"); *In re New Motor Vehicles Canadian Export Antitrust Litigation*, 522 F.3d 6, 8 (1st Cir. 2008); *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1274-75 (11th Cir. 2000); Janet Cooper Alexander, "Do the Merits Matter? A Study of Settlements in Securities Class Actions," 43 *Stan. L. Rev.* 497 (1991).

These observations are pertinent to the present case because the Telephone Consumer Protection Act imposes potentially very heavy penalties on its violators—many of whom, quite possibly including tiny Ashford Gear, have never heard of this obscure statute. The only difference between *Szabo v. Bridgeport Machines, Inc.*, *supra*, and this case is that while in *Szabo* class certification turned a $200,000 dispute (the amount that Szabo claimed as damages) into a $200 million dispute—a thousandfold increase—this case turns a dispute of at most $3,000 (the maximum statutory penalty for the two unsolicited fax advertisements allegedly, though, as we'll note, probably not, received by the plaintiff) into an $11.11 million suit (assuming no trebling)—an almost four-thousand-fold increase—against a home-furnishings wholesaler in California that has three employees and annual sales of half a million dollars. www.powerprofiles.com/profile/00005150131254/ASHFORD+GEAR,+LLC-GARDENA-CA-(310)+327-4670 (visited Nov. 17, 2011); Dun & Bradstreet Market Identifiers, "Ashford Gear LLC" (2011) (available on Westlaw).

A class may be certified only if "the trial court is satis-fied, *after a rigorous analysis*, that the prerequisites of Rule 23(a) have been satisfied." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011), quoting *General Tele-phone Co. v. Falcon*, 457 U.S. 147, 161 (1982) (emphasis added); see also, e.g., *CE Design Ltd. v. King Architectural Metals, Inc.*, *supra*, 637 F.3d at 723; *In re Schering Plough Corp. ERISA Litigation*, 589 F.3d 585, 595-96 (3d Cir. 2009). A rigorous analysis was not conducted.

Class counsel, mainly lawyers from the law firm of Bock & Hatch, the class counsel in the *CE Design* case (a Telephone Consumer Protection Act case in which we ordered the class decertified), specialize in bringing class action suits under the Act. The class certified in this case consists of 14,574 persons, who are alleged to have received a total of 22,222 unsolicited faxed ad-vertisements from the defendant.

The lawyers learned about these faxes not from a recipi-ent, but from a fax broadcaster (Caroline Abraham, who conducts her business under the name B2B)—a company that faxes advertisements as an agent of the advertiser. The lawyers asked her for transmission reports of faxes that she had sent and information on how to communicate with the intended recipients, but promised not to disclose any of this material to a third party. On the basis of this assurance of confidentiality she turned over material that evidenced (or so it is al-leged) faxes of advertisements that Ashford Gear had sent to the 14,574 persons constituting the class. One of the recipients was the Creative Montessori Learning

Center, a private school. www.creativemontessori.com/
about_us.html (visited Nov. 17, 2011). The lawyers
notified Creative Montessori that "during our investiga-
tion, we have determined that you are likely to be a
member of the class. You might not remember receiving
the junk faxes, but if the lawsuit is successful, you would
receive compensation (up to $1,500) for each junk fax
sent. We would like to discuss this issue with you.
Please call me [telephone number]." Which it seems
Creative Montessori did—though actually it seems that
the junk faxes supposedly sent to Creative Montessori
were images from Abraham's computer of advertise-
ments that never had been sent. Nevertheless Creative
Montessori became the named plaintiff and (therefore)
class representative.

This class action suit is one of more than 50 similar
class action suits based on information from Abraham's
records concerning firms that used her faxing services
and the recipients of the faxes.

The defendant urged the district court to deny class
certification, arguing that class counsel's misconduct
showed that counsel would not adequately represent
the class. The district judge found that there had
indeed been misconduct by the lawyers. The misconduct
had taken two forms: obtaining material from Abraham's
files on the basis of a promise of confidentiality that
concealed the purpose of obtaining the material, a
purpose inconsistent with maintaining confidentiality
and likely to destroy Abraham's business; and implying
in the letter to Creative Montessori that there already

was a certified class to which the school belonged. (This second allegation would constitute misconduct not because the lawyers communicated with a potential class action plaintiff personally, but because the communication was misleading.) But the judge ruled that the proper sanction for these wrongful acts was discipline by the bar authorities, and that the acts cast no shadow on the adequacy of class counsel to represent the class.

But class counsel have demonstrated a lack of integrity that casts serious doubt on their trustworthiness as representatives of the class. Fed. R. Civ. P. 23(a)(4), (g). There is no basis for confidence that they would prosecute the case in the interest of the class, of which they are the fiduciaries, *Culver v. City of Milwaukee*, 277 F.3d 908, 913 (7th Cir. 2002); *In re Pharmaceutical Industry Average Wholesale Price Litigation*, 588 F.3d 24, 36 n. 12 (1st Cir. 2009); *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 968 (9th Cir. 2009); *Sondel v. Northwest Airlines, Inc.*, 56 F.3d 934, 938 (8th Cir. 1995), rather than just in their interest as lawyers who if successful will obtain a share of any judgment or settlement as compensation for their efforts.

Class counsel owe a fiduciary obligation of particular significance to their clients when the class members are consumers, who ordinarily lack both the monetary stake and the sophistication in legal and commercial matters that would motivate and enable them to monitor the efforts of class counsel on their behalf. *Culver v. City of Milwaukee, supra*, 277 F.3d at 913; *In re Cendant Corp. Securities Litigation*, 404 F.3d 173, 186-87 (3d Cir. 2005); Samuel Issacharoff, "Governance and Legitimacy in the

Law of Class Actions," 1999 *S. Ct. Rev.* 337, 371-72; Jonathan R. Macey & Geoffrey P. Miller, "The Plaintiffs' Attorney's Role in Class Action and Derivative Litigation: Economic Analysis and Recommendations for Reform," 58 *U. Chi. L. Rev.* 1, 19-20 (1991). That is why settlements of class actions require approval by the district court, Fed. R. Civ. P. 23(e); *Reynolds v. Beneficial National Bank*, 288 F.3d 277, 279-80 (7th Cir. 2002); *In re Cendent Corp. Litigation*, 264 F.3d 201, 282 (3d Cir. 2001); *United States v. City of Miami*, 614 F.2d 1322, 1330-31 (5th Cir. 1980), while settlements of suits that are not class actions do not, with a few exceptions, such as shareholder derivative suits (which resemble class actions). The court takes the place, as monitor of counsel, of the nominal clients.

That is a difficult role for a court to play—accustomed as judges in our system are to playing the role of arbiter of an adversary proceeding rather than imitating a Continental-style investigating magistrate—when faced with an alliance of the supposed adversaries (unless there is an objector). *Alleghany Corp. v. Kirby*, 333 F.2d 327, 347 (2d Cir. 1964) (Friendly, J., dissenting); Edward Brunet, "Class Action Objectors: Extortionist Free Riders or Fairness Guarantors," 2003 *U. Chi. Legal Forum* 403, 405-06; Samuel Issacharoff, "Class Action Conflicts," 30 *U.C. Davis L. Rev.* 805, 829 (1997); John C. Coffee, Jr., "Understanding the Plaintiff's Attorney: The Implications of Economic Theory for Private Enforcement of Law through Class and Derivative Actions," 86 *Colum. L. Rev.* 669, 714 (1986). As Professor Coffee put it in another article, "the trial court's approval is a weak reed on which to rely once the adversaries have linked arms and approached

the court in a solid phalanx seeking its approval." Coffee, "The Unfaithful Champion: The Plaintiff as Monitor in Shareholder Litigation," 48 *Law & Contemp. Probs.* 5, 26-27 (Summer 1985).

We and other courts have often remarked the incentive of class counsel, in complicity with the defendant's counsel, to sell out the class by agreeing with the defendant to recommend that the judge approve a settlement involving a meager recovery for the class but generous compensation for the lawyers—the deal that promotes the self-interest of both class counsel and the defendant and is therefore optimal from the standpoint of their private interests. *Reynolds v. Beneficial National Bank*, *supra*, 288 F.3d at 279; *Culver v. City of Milwaukee, supra*, 277 F.3d at 910; *Greisz v. Household Bank (Illinois), N.A.*, 176 F.3d 1012, 1013 (7th Cir. 1999); *Duhaime v. John Hancock Mutual Life Ins. Co.*, 183 F.3d 1, 7 (1st Cir. 1999); *In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768, 805 (3d Cir. 1995); *Plummer v. Chemical Bank*, 668 F.2d 654, 658 (2d Cir. 1982). When class counsel have demonstrated a lack of integrity, a court can have no confidence that they will act as conscientious fiduciaries of the class. 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1769.1, pp. 468-69 (3d ed. 2005); see, e.g., *Wagner v. Lehman Bros. Kuhn Loeb Inc.*, 646 F. Supp. 643, 661-62 (N.D. Ill. 1986); *Stavrides v. Mellon National Bank & Trust Co.*, 60 F.R.D. 634, 637 (W.D. Pa. 1973); see also *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987); cf. *Howard v. Ray's LLC*, No. 1:08-cv-627-RLY-MJD, 2011 WL 4625735, at *5 (S.D. Ind. Sept. 30, 2011).

To suggest as the district court did that "only the most egregious misconduct" by class counsel should require denial of class certification on grounds of lack of adequate representation was bad enough. To rule that only the most egregious misconduct "could *ever arguably* justify denial of class status," as the court went on to hold, would if taken literally condone, and by condoning invite, unethical conduct. Misconduct by class counsel that creates a serious doubt that counsel will represent the class loyally requires denial of class certification. See *Culver v. City of Milwaukee, supra*, 277 F.3d at 913.

It is true that the language we quoted from the district judge comes originally from one of our own opinions—*Halverson v. Convenient Food Mart, Inc.*, 458 F.2d 927, 932 (7th Cir. 1972). But it was a throwaway line in that opinion. The court had already decided that class counsel had committed only a "slight," and in fact harmless, breach of ethics. *Id.* at 931. It cited with apparent approval two district court decisions that had "denied class status to plaintiffs whose attorneys were guilty of misconduct," noting that the misconduct had been "serious." *Id.* at 931-32, citing *Taub v. Glickman*, No. 67 Civ. 3447, 1970 WL 210, at *2-3 (S.D.N.Y. Dec. 1, 1970); *Korn v. Franchard Corp.*, No. 67 Civ. 3445, 1970 WL 3481, at *3 (S.D.N.Y. Oct. 22, 1970), though adding that "there were other circumstances pointing to denial of class status," *id.* at 932, and noting noncommittally that "in *Kronenberg v. Hotel Governor Clinton, Inc.*, 281 F. Supp. 622 (S.D.N.Y. 1968), where the misconduct was serious, the court took a liberal view of Rule 23," 458 F.3d at 921, and refused to revoke its certification of the class represented by the

lawyers who had engaged in the misconduct. A serious or, equivalently, a "major" ethical violation, *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1324 (11th Cir. 2008), should place on class counsel a heavy burden of showing that they are adequate representatives of the class.

Moreover, *Halverson* dates from an era before concerns with the adequacy of representation by class counsel had become acute, despite Judge Friendly's prescient dissent in *Alleghany Corp. v. Kirby*, *supra*, warning of the problem. In response to growing concerns with the adequacy of representation by class counsel, Rule 23 was amended in 2003—long after *Halverson*—by the addition of a new subsection, (g), "to guide the court in assessing proposed class counsel as part of the certification decision." Committee Note to 2003 Amendments to Rule 23, Subdivision (g). The new subsection emphasizes that class counsel must "fairly and adequately" represent the entire class. Fed. R. Civ. P. 23(g)(1)(B). There is reason to doubt that class counsel in this case will do that. The certification of the class is therefore vacated and the case remanded with directions that the district court, applying the *Culver* standard rather than the "egregious misconduct" standard, re-evaluate the gravity of class counsel's misconduct and its implications for the likelihood that class counsel will adequately represent the class.

VACATED AND REMANDED,
WITH DIRECTIONS.