In the

# United States Court of Appeals

### For the Seventh Circuit

No. 12-2599

RELIABLE MONEY ORDER, INC., individually
and as the representative of a class of
similarly-situated persons,

*Plaintiff-Appellee,*

*v.*

MCKNIGHT SALES CO., INC.,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 2:10-cv-00242-WEC—**William E. Callahan, Jr.**, *Magistrate Judge.*

ARGUED NOVEMBER 27, 2012—DECIDED JANUARY 9, 2013

Before FLAUM and TINDER, *Circuit Judges*, and THARP,
*District Judge.*\*

FLAUM, *Circuit Judge.* At oral argument, plaintiff's
counsel acknowledged that he did not expect an opinion

---

\* The Honorable John J. Tharp, Jr., United States District Judge
for the Northern District of Illinois, sitting by designation.

that extolled certain actions of co-counsel. In that assumption, he was correct: while investigating the claims in this case, counsel with the firm of Anderson + Wanca engaged in conduct which gives this Court serious pause. Because of this alleged misconduct, defendant asks us to reverse the district court's class certification order appointing Anderson + Wanca as class counsel. Suffice it to say, while we neither approve of nor condone the actions of Anderson + Wanca attorneys when investigating the claims in this suit, we nevertheless do not conclude that counsels' questionable performance in the investigative stage of this case prevents class certification. For the reasons below, we affirm.

## I. Background

### A. Factual Background

Anderson + Wanca and Bock & Hatch are two Chicago-area law firms that specialize in representing plaintiffs in class action lawsuits under the Telephone Consumer Protection Act as amended by the Junk Fax Prevention Act of 2005 (the "Act"). The Act authorizes $500 in statutory damages for faxing an unsolicited advertisement. 47 U.S.C. § 227(b)(1)(C), (b)(3). This award triples upon a showing of willfulness, and each transmission is a separate violation. *Id.*; *see also Creative Montessori Learning Ctrs. v. Ashford Gear, LLC*, 662 F.3d 913, 914 (7th Cir. 2011) [hereinafter *Ashford Gear II*]. Because plaintiffs may enforce the statute via class action and because a single advertisement is often faxed to hundreds—if not thousands—of phone numbers, suits under the Act

present lucrative opportunities for plaintiffs' firms. This appeal involves one firm's response to these financial incentives and its attorneys' conduct in identifying potential new cases under the Act.

### 1. Caroline Abraham, Business-to-Business Solutions, and the Original Four Cases

Caroline Abraham and her company Business-to-Business Solutions ("B2B") sit at the center of this lawsuit and scores of others. B2B contracted with businesses to send advertisements via facsimile. Advertisers would pay a fee, and B2B would send the ad to hundreds of fax numbers purchased from InfoUSA, Inc. (a practice known as "fax-blasting"). Abraham, B2B's sole employee, never obtained from the fax recipients permission to send them the advertisements.

B2B attracted the attention of Anderson + Wanca during its investigation of four other putative class action lawsuits (the "Four Cases") brought under the Act. Class certification in those cases, however, initially presented challenges—the plaintiffs lacked proof of an identifiable class because they could not identify the recipients of the advertisements. *E.g.*, *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07 C 5953 (N.D. Ill. Dec. 9, 2008) (Dkt. No. 43) (order denying class certification for lack of an identifiable class). Anderson + Wanca knew, though, that the defendants in the Four Cases had contracted with B2B to fax the offending advertisements. Unsurprisingly, Caroline Abraham's B2B records became the focus of discovery.

After she initially denied having any fax lists, Ms. Abraham later admitted to finding fax records from B2B. Her adult son, Joel Abraham, had found "some old back-up disks" in a "box somewhere in his room." (Joel lived with Caroline.) The Abrahams also located a hard drive with fax broadcasting data, and Joel Abraham converted the data into a Microsoft Excel spreadsheet. Caroline Abraham then produced these spreadsheets in discovery, listing only the recipients of the advertisements commissioned by the specific defendants in the Four Cases. Plaintiffs' counsel thus had their proof of an identifiable class and certification followed. *E.g., G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07 C 5953 (N.D. Ill. Aug. 20, 2009) (Dkt. Nos. 78, 79).

Flush with success, Anderson + Wanca recognized that the B2B hard drives and fax lists likely contained a treasure trove of potential clients for putative class action lawsuits. So, despite having all information necessary to certify the classes in the Four Cases, Anderson + Wanca continued pushing Caroline Abraham to disclose all B2B fax transmission data. Ryan Kelly, an attorney at Anderson + Wanca, met with Caroline Abraham and asked her for the actual back-up disks and hard drive. He told her that "nobody would look at anything on these media not related" to the Four Cases. Indeed, Kelly even emailed Ms. Abraham a copy of the protective order filed in one of the Four Cases, explaining that it "will prevent [Kelly] from disclosing any of the back-up disks or hard drive to any third-party." To receive those protections, however, the producing party

had to stamp documents confidential or notify plaintiff's counsel of their confidential nature at the time of production. Ms. Abraham continued to resist.[1]

Ultimately, plaintiff's counsel subpoenaed Joel Abraham to testify at a deposition. The subpoena also ordered Mr. Abraham to produce, at the time of his deposition, the back-up disks and hard drive. Appearing at the deposition with attorney Eric Ruben, Joel Abraham produced the materials. Neither he nor Ruben, who had read the protective order, asserted confidentiality. Even so, Anderson + Wanca later instructed defense counsel to "treat the DVD produced by Joel Abraham as confidential pursuant to the protective order[.]" *CE Design Ltd. v. Cy's Crabhouse North, Inc.*, No. 07 C 5456, 2010 WL 2365162, at *6 (N.D. Ill. June 11, 2010) [hereinafter *Cy's Crabhouse I*].

The back-up disks and hard drive revealed not only the recipients of fax advertisements sent by the defendants in the Four Cases but the names of other B2B clients as well.

---

[1] Apparently, Caroline Abraham's hesitation arose from the fact that she had recently been sued as a third-party defendant in the *Cy's Crabhouse* case. *See CE Design Ltd. v. Cy's Crabhouse North, Inc.*, No. 07 C 5456 (N.D. Ill. Sept. 29, 2008) (Dkt. No. 91).

### 2. Armed with Data from B2B's Electronic Files, Plaintiff's Counsel Files Scores of Putative Class Actions Under the Telephone Consumer Protection Act

The B2B files provided a treasure trove of potential new clients for Anderson + Wanca, revealing the names of other potential defendants who contracted with B2B to send unsolicited fax advertising and listing the recipients of that advertising.

Hoping to tap that reserve of potential litigants, Anderson + Wanca began sending out solicitation letters to the recipients of B2B's fax-blasting. The letter in this case, addressed to Fast & Friendly Grocery, reads, in part:[2]

> *My law firm pursues class action lawsuits against companies that send junk faxes in Illinois and elsewhere.*
>
> * * *
>
> *During our investigation, we have determined that you are likely to be a class member in one or more cases we are pursuing. You might not remember receiving the junk faxes, but if the lawsuit were successful, you would receive compensation (from $500 to $1,500) for each junk fax sent to you.*
>
> *We would like to discuss this issue with you. Please call me at* [phone number] *or send an email to* [email address].

The letter was stamped "advertising material" at the bottom but was not registered with the Wisconsin Office

---

[2] As explained below, letters sent to different putative plaintiffs differed slightly in wording.

of Lawyer Regulation, as required by state law. *See* Wis. Sup. Ct. R. 20:7.3(c).[3] Plaintiff's counsel subsequently destroyed their records identifying the recipients of these letters, explaining to the magistrate judge in *Ashford Gear* that they did "not possess and did not retain a list of the names and addresses of the persons who were sent" these letters.

Upon receipt of this letter, Fast & Friendly Grocery forwarded it to Reliable Money Order, who contacted Anderson + Wanca and became the named plaintiff in this case. Reliable Money Order rents space from Fast & Friendly and possessed the only fax machine on the property. Reliable Money Order was not the only new client netted from the solicitation letters: Anderson + Wanca attorneys have filed over one hundred putative class actions under the Act, all rooted in data recovered from the B2B disks and hard drive.

### 3. Anderson + Wanca Sends Eric Ruben a $5,000 Check

In August 2009, Anthony Wanca, a partner with Anderson + Wanca, sent Ruben a $5,000 check, made payable to Eric Ruben, in a Ramada Inn envelope. The envelope contained no cover letter but the check beared a notation simply reading "document retrieval." Ruben voided the check and returned it. Plaintiff's counsel

---

[3] Though licensed in Illinois, Anderson + Wanca attorneys are still subject to the Wisconsin rules because they filed this suit in the Eastern District of Wisconsin. E.D. Wis. Loc. R. 83(d)(1).

had previously compensated Ms. Abraham for expenses arising from the depositions and document production but these earlier payments never neared $5,000.

## B. Procedural Background

Upon learning of Anderson + Wanca's promises of confidentiality to Ms. Abraham, defendants in the lawsuits arising from the B2B data (many of whom are represented by defense counsel in this case) began challenging the propriety of class certification on grounds that misconduct by Anderson + Wanca attorneys disqualified the firm as adequate class counsel. *See* Fed. R. Civ. P. 23(g)(1)(B). Defendants, including McKnight, have generally raised three instances of misconduct that, they argue, require denial of class certification. First, they argue that Anderson + Wanca breached a promise of confidentiality by using the B2B data to identify targets of additional lawsuits. Second, they argue that Anderson + Wanca sent misleading solicitation letters. Finally, they challenge the $5,000 check as improper witness compensation intended to influence the content of testimony.

Several district courts have addressed these allegations so we provide deeper procedural background than we would ordinarily.

### 1. The Beginning: *CE Design Ltd. v. Cy's Crabhouse North, Inc.*

*Cy's Crabhouse I* first evaluated the propriety of Kelly's representations to Ms. Abraham regarding confidentiality, though the issue arose in a different procedural posture than class certification. Defendant Cy's Crabhouse moved to dismiss the already-certified class action, raising as grounds Anderson + Wanca's alleged violation of the protective order and the attempted $5,000 payment to Ruben. Denying the motion, the court found that "the conduct of [plaintiff's counsel] on this point was not entirely on the up and up." 2010 WL 2365162, at *6.

Moreover, it refused to place the disks and hard drive outside the scope of the protective order merely because of the Abrahams' failure to designate it as confidential at the time of production:

> It is undisputed that Kelly represented to Abraham that the materials she turned over would be treated as confidential and that he referred specifically to a protective order . . . . Given those circumstances, it is rather disingenuous for plaintiffs counsel now to argue that it is Abraham's own fault that the materials are not "confidential" as defined by the protective order because she failed to comply with the technical designation process. The Court also notes that CE Design's counsel himself appears to have believed, at least at one point, that the information on the disk Joel produced at his deposition was confidential. In an e-mail to counsel for Cy's

Crabhouse, Kelly said, "please treat the DVD produced by Joel Abraham as confidential pursuant to the protective order in this case."

*Id.* Nevertheless, dismissal was unwarranted because the defendant could not show prejudice from the violation of the protective order. Sufficiently troubled, the court scheduled a later "hearing to determine how the materials from B2B have been used and the rationale supporting such use." *Id.* at *7. It reserved the right to impose additional sanctions if necessary. *Id.*

Following this second hearing, the court concluded that the information was not covered by the protective order, vacating the *Cy's Crabhouse I* order designating the data confidential. Importantly, the Abrahams' technical failure to assert confidentiality was not the court's reason for doing so. No. 07 C 5456, 2010 WL 3327876, at *2 (N.D. Ill. Aug. 23, 2010) [hereinafter *Cy's Crabhouse II*]. Instead, no good cause justified confidentiality.[4] *Id.* at *3.

Finally, *Cy's Crabhouse II* also addressed the propriety of the $5,000 check mailed to Ruben. After additional evidentiary submissions, the court absolved Anderson +

---

[4] Ms. Abraham had offered four justifications for good cause: (1) the material was her property; (2) she wanted to end third-party lawsuits naming her as a defendant; (3) she did not like seeing her old customers suffer as defendants in these lawsuits; and (4) appearing for depositions in the many lawsuits arising from her business operations was burdensome. *See Cy's Crabhouse II*, 2010 WL 3327876, at *3.

Wanca of wrongdoing. Noting that the Illinois professional conduct rules prohibit payments to witnesses contingent on the content of the witness's testimony or the outcome of the case, *Cy's Crabhouse II* explained that "[n]othing in any of the parties' filings suggests that Wanca or Kelly paid or attempted to pay Abraham or Joel anything 'contingent upon the content' of their testimony or documents. . . . In other words, neither [Ruben] nor Abraham suggests that any such inducement was proposed or even hinted at." *Id.* at *7. The parties ultimately settled the *Cy's Crabhouse* litigation.

### 2. The Seventh Circuit Identifies the Appropriate Test for when Counsel Misconduct Requires Denial of Certification: the *Ashford Gear* Litigation

The *Ashford Gear* litigation was the first to consider whether counsels' misconduct required denial of class certification. Like McKnight here, the defendant in *Ashford Gear* opposed class certification, arguing the same misconduct that McKnight argues in this case—Kelly's misrepresentations to Ms. Abraham regarding the confidentiality of the fax lists and the misleading solicitation letter.[5] Explaining that "[o]nly the most

---

[5] The solicitation letter sent to Montessori Learning Centers differed slightly in wording from the letter counsel sent to Reliable Money Order (through Fast & Friendly Grocery). Compare the letter sent to Creative Montessori:

> [D]uring our investigation, we have determined that you are likely to be a member *of the class*. You might not remem-
> (continued...)

egregious misconduct on the part of [a plaintiff's] lawyer could ever arguably justify denial of class status," the district court certified the class. *Creative Montessori Learning Ctr. v. Ashford Gear LLC*, No. 09 C 3963, 2011 WL 3273078, at *4-7 (N.D. Ill. July 27, 2011) [hereinafter *Ashford Gear I*] (quoting *Halverson v. Convenient Food Mart, Inc.*, 458 F.2d 927, 932 (7th Cir. 1972)). Agreeing with *Cy's Crabhouse I* that counsel's representations to Ms. Abraham were not "entirely on the up and up," *Ashford Gear I* nevertheless certified the class relying on the *Cy's Crabhouse II* decision vacating the protective order. *Ashford Gear I*, 2011 WL 3273078, at *5. As to the solicitation letter, *Ashford Gear I* saw a violation of ABA Model Rule of Professional Conduct 7.3(c): the letter misled by suggesting a certified class already

---

[5]  (...continued)

> ber receiving the junk faxes, but if the lawsuit is successful, you would receive compensation (up to $1,500) for each junk fax sent.

*Ashford Gear II*, 662 F.3d at 916 (emphasis added), to the letter Reliable received:

> During our investigation, we have determined that you are likely to be a *class member in one or more of the cases we are pursuing*. You might not remember receiving the junk faxes, but if the lawsuit were successful, you would receive compensation (from $500 to $1,500) for each junk fax sent *to you*.

*Reliable Money Order, Inc. v. McKnight Sales Co.*, 281 F.R.D. 327, 337 (E.D. Wis. 2012) (emphasis added).

existed. *Id.* at *6. The court, however, "doubt[ed] that [a violation of Rule 7.3(c)] qualifies as the 'most egregious misconduct'" so as to require denial of class certification. *Id.* at *7. Noting the "considerable experience" of plaintiff's counsel in litigating class actions under the Act and the preference for disciplinary action against the lawyer over denial of certification to punish attorney misconduct, *Ashford Gear I* certified the class.

Ashford Gear filed a petition for interlocutory review. *See* Fed. R. Civ. P. 23(f). Plaintiff never responded. We vacated the class certification order and remanded to the district court with instructions to apply a new standard. *Ashford Gear II*, 662 F.3d at 919. Rejecting the *Halverson* standard used by the district court, we found the standard from *Culver v. City of Milwaukee*, 277 F.3d 908 (7th Cir. 2002), more appropriate: "[m]isconduct by class counsel that creates a serious doubt that counsel will represent the class loyally requires denial of class certification." *Ashford Gear II*, 662 F.3d at 919.

As we explained, unethical conduct by class counsel implicates class certification because class counsel serves as a fiduciary for the unnamed plaintiffs. *Id.* at 917 (citing *Culver*, 277 F.3d at 913). Class actions present strong incentives for counsel "to sell out the class by agreeing with the defendant to recommend that the judge approve a settlement involving a meager recovery for the class but generous compensation for the lawyers[.]" *Id.* at 918 (citing numerous cases). Thus, when "class counsel have demonstrated a lack of integrity" through misconduct and unethical action, "a court can have

no confidence that they will act as conscientious fiduciaries of the class." *Id.*

*Ashford Gear II* ultimately remanded with instructions to evaluate counsel's misconduct under this standard.

### 3. The District Court Applies *Ashford Gear II* to the Class Certification Question

The decision currently on appeal, *Reliable Money Order, Inc. v. McKnight Sales Co.*, 281 F.R.D. 327 (E.D. Wis. 2012), was the first after *Ashford Gear II* to consider expressly whether the misconduct alleged in the *Cy's Crabhouse* litigation renders plaintiff's counsel inadequate. As to the misrepresentations in obtaining the fax lists, the *Reliable Money Order* district court agreed that counsel's behavior "was not entirely on the up and up." 281 F.R.D. at 336 (quoting *Cy's Crabhouse I*, 2010 WL 2365162, at *6). Ultimately, though, the court concluded that this "behavior does not create 'serious doubt that class counsel will represent the class loyally.'" *Id.* (quoting *Ashford Gear II*, 662 F.3d at 918). Importantly, the district court emphasized that Anderson + Wanca broke no promise to a client, putative class member, or class member. It did, however, suggest Anderson + Wanca breached a promise of confidentiality to Ms. Abraham. *Id.* Thus, without condoning Kelly's conduct toward Ms. Abraham, the district court did not believe that the conduct undermined the loyalty of plaintiff's counsel.

Moving on to the solicitation letter sent to Fast & Friendly Grocery (and ultimately passed on to plaintiff Reliable Money Order), the district court concluded

that the letter was not misleading. First, Anderson + Wanca addressed it to Fast & Friendly, making it "unlikely that Reliable Money was misled into believing that it was a member of an already existing class." *Id.* at 337. Additionally, the words "Advertising Material," stamped on the bottom of the letter, removed what little possibility of deception may have existed. *Id.* Finally, the *Reliable Money Order* court concluded that the failure to register the letter as required by Wisconsin rules "is insufficient to find that counsel will not adequately protect the interests of the class." *Id.* at 337 n.5.

In short, the district court here focused heavily on the purpose underlying Rule 23: "to ensure that the attorneys representing the class will adequately represent those class members who are not actively involved in the case, or may not know that a case exists at all." *Id.* at 337. Ethical violations alone, it reasoned, did not automatically render class counsel inadequate.

McKnight filed a petition for interlocutory review of the district court's class certification order; Reliable Money Order opposed, and we granted the petition. After the close of briefing in this case, Reliable Money Order moved to dismiss the appeal, arguing that the justifications for interlocutory review no longer existed.

Following the district court's decision in this case, at least six other federal district courts have applied the *Ashford Gear II* "serious doubt" standard to the very same misconduct. *See Imhoff Inv., LLC v. SamMichaels, Inc.*, No. 10-10996, 2012 WL 4815090 (E.D. Mich. Oct. 1, 2012); *Bridgeview Health Care Ctr. Ltd. v. Clark*, No. 09 C 5601

(N.D. Ill. Sept. 28, 2012) (Dkt. No. 140); *Van Sweden Jewelers, Inc. v. 101 VT, Inc.*, No. 1:10-cv-253, 2012 WL 4127824 (W.D. Mich. Sept. 19, 2012); *Creative Montessori Learning Ctr. v. Ashford Gear, LLC*, No. 09 C 3963, 2012 WL 3961307 (N.D. Ill. Sept. 10, 2012) [hereinafter *Ashford Gear III*]; *Jackson's Five Star Catering, Inc. v. Beason*, No. 10-10010, 2012 WL 3205526 (E.D. Mich. July 26, 2012); *Am. Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, No. 1:09-cv-1162, 2012 WL 3027953 (W.D. Mich. July 24, 2012).[6] Although the various district courts made conflicting findings on whether Anderson + Wanca breached a promise of confidentiality or mailed misleading solicitations, see footnote 9, *infra*, all agreed that the conduct did not require denial of class certification.

### III.  Discussion

### A.  Reliable Money Order's Motion to Dismiss

Rule 23(f) infuses courts of appeals with discretionary authority to grant interlocutory review of class certification decisions. *See* Fed. R. Civ. P. 23(f). This authority is broad: we have "unfettered discretion whether to permit the appeal, akin to the discretion exercised by the Supreme Court in acting on a petition for certiorari."

---

[6] One other case found Anderson + Wanca's representation adequate but did not consider the misconduct presented in this case or the "serious doubt" standard of *Ashford Gear II*. *Siding & Insulation Co. v. Beachwood Hair Clinic, Inc.*, 279 F.R.D. 442 (N.D. Ohio 2012).

*Blair v. Equifax Check Servs., Inc.*, 181 F.3d 832, 833 (7th Cir. 1999) (quoting Committee Note to Rule 23(f)). Although no "bright-line" test or "catalog of factors" governs the wisdom of interlocutory appeal under Rule 23(f), *Blair* identified three situations when such an appeal is probably appropriate. First, interlocutory review makes sense when individual damages are so low that the named plaintiff likely would not forge ahead with his claim, regardless of its merits, if denied class action status. *Id.* at 834. Likewise, when class action status so greatly expands the defendant's potential liability so as to coerce a settlement, even if meritorious, interlocutory review is also appropriate. *Id.* at 834-35. Finally, an appeal that advances class action law might justify interlocutory review. *Id.* at 835. Reliable Money Order now argues for dismissal of McKnight's appeal, suggesting that subsequent developments have undermined McKnight's original justifications for interlocutory review. Even considering these developments, several of the *Blair* considerations continue to apply. We deny the motion to dismiss.

First, this appeal would inform class action law. In its petition, McKnight raised the possibility of conflicting district court opinions to justify interlocutory appeal. Because all post-*Ashford Gear II* district courts have found counsel adequate, interlocutory appeal is no longer necessary according to Reliable Money Order. True enough, McKnight did raise inconsistent outcomes in its petition for appeal. But McKnight also argued improper application of *Ashford Gear II*, a question no appellate court has yet reviewed in any of the B2B

cases. Attorney misconduct requiring denial of class certification has received little treatment in the circuit courts. Thus, this appeal "may facilitate the development of the law," supporting denial of the motion to dismiss. *Blair*, 181 F.3d at 835. What is more, the B2B records spawned over one hundred lawsuits so the possibility of inconsistent district court opinions remains. In any event, and in light of the many B2B cases still pending, district courts will benefit from additional guidance on the application of *Ashford Gear II*'s "serious doubt" standard.

Second, class certification here presents precisely the scenario where "stakes are large and the risk of a settlement or other disposition [may] not reflect the merits of the claim[.]" *Blair*, 181 F.3d at 835. The district court's certification order extends McKnight's exposure to nearly $5 million. In contrast, denial of class certification would keep this case a one-count, $1,500 claim. Such a dramatic increase in potential liability would raise the prospect of coercing a settlement from McKnight, a self-described "small family business." *See Szabo v. Bridgeport Mach., Inc.*, 249 F.3d 672, 675 (7th Cir. 2001) (Rule 23(f) appeal appropriate when class certification turned $200,000 dispute into $2 million dispute).

In the end, two of *Blair*'s three considerations are present in this case. We also note that the parties have briefed and argued the merits of this issue. Having denied the motion to dismiss, we move on to the merits.

## B. Anderson + Wanca's Misconduct Does Not Require Denial of Class Certification

We review class certification orders for abuse of discretion. *Kress v. CCA of Tenn., LLC*, 694 F.3d 890, 892 (7th Cir. 2012) (citation omitted). Abuse of discretion results when a district court commits legal error or makes clearly erroneous factual findings. *Id.* (citing *Christmas v. City of Chi.*, 682 F.3d 632, 638 (7th Cir. 2012)). So long as the district court employs the "rigorous analysis" required by Rule 23, it enjoys broad leeway in deciding the adequacy of class counsel. *See Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 728 (11th Cir. 1987) (noting "adequacy of class representation is primarily a factual issue"). The district court here applied the proper legal test—*Ashford Gear II*'s "serious doubt" standard—and employed a "rigorous analysis" when doing so. Indeed, the district court's thorough and carefully reasoned opinion is oft-cited in the other cases rooted in the B2B data. *See Van Sweden Jewelers*, 2012 WL 4127824, at *8; *Imhoff Inv.*, 2012 WL 4815090, at *2; *Ashford Gear III*, 2012 WL 3961307, at *2. Thus, we review the district court's confirmation order for abuse of discretion.

Anything "pertinent to counsel's ability to fairly and adequately represent the interests of the class" bears on the class certification decision. Fed. R. Civ. P. 23(g)(1)(B).[7]

---

[7] The district court must also consider counsel's work on the case to date, counsel's class action experience, counsel's knowledge of the applicable law, and the resources counsel will

(continued...)

As we made clear in *Ashford Gear II*, an attorney's misconduct or ethical breach is pertinent: the potential attorneys' fees in a class action so far outweigh the potential recovery of any individual plaintiff that they present attorneys with a strong temptation "to sell out the class by agreeing with the defendant to recommend that the judge approve a settlement involving a meager recovery for the class but generous compensation for the lawyers[.]" *Ashford Gear II*, 662 F.3d at 918. Given this temptation—in tension with the fiduciary obligations of class counsel to the unnamed class members, *see Culver*, 277 F.3d at 913—when "class counsel have demonstrated a lack of integrity, a court can have no confidence that they will act as conscientious fiduciaries of the class." *Ashford Gear II*, 662 F.3d at 918.

Not any ethical breach justifies the grave option of denying class certification. No doubt, misconduct that prejudices the class or creates a direct conflict between counsel and the class requires such denial under *Ashford Gear II*'s serious doubt standard. S*ee, e.g., Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 959-60 (9th Cir. 2009) (direct conflict between counsel and class); *Piambino v. Bailey*, 757 F.2d 1112, 1144-46 (11th Cir. 1985) (same); *Walter v. Palisades Collection, LLC*, No. 06-378, 2010 WL 308978, at *10-11 (E.D. Penn. Jan. 26, 2010) (noting ethical

---

[7] (...continued)
commit to the case. *See* Fed. R. Civ. P. 23(g)(1)(A). No one disputes the qualifications of plaintiff's counsel under these metrics.

violations related to attorney competency); *In re Mid-Atlantic Toyota Antitrust Litig.*, 93 F.R.D. 485, 489-90 (D. Md. 1982) (denying class certification where fee arrangement created conflict of interest between attorney and class). McKnight does not identify any conflict of interest or prejudice to the class arising from the misconduct here.

Nevertheless, even "serious" or "major" ethical violations—not prejudicial to the class—can require denial of class certification. *Ashford Gear II*, 662 F.3d at 919. We thus reject the suggestion of plaintiff's counsel that only misconduct directly harming the class is relevant to the class certification decision. That does not mean, however, that an ethical violation always requires denial of certification, as McKnight argues. A "slight" or "harmless" breach of ethics will not impugn the adequacy of class counsel. *See id.* at 918; *see also Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323-24 (11th Cir. 2008) (noting that even if plaintiff's counsel "violated Rule 7.3 [of the Alabama Rules of Professional Conduct], the district court was not then required to find [plaintiff] inadequate to represent the class" (citing *Halverson*, 458 F.2d at 932)).[8] This conclusion makes sense: the ABA Model Rules, the

---

[8] McKnight briefly suggests that, because the mere appearance of impropriety warrants denial of class certification, *see Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 88 (7th Cir. 1977), full-blown violations of the ethics rules should always require the same. But *Susman* involved a conflict between proposed class counsel and the class, *id.*, not rules violations unconnected to any prejudice to the class.

Illinois Rules, and the Wisconsin Rules all warn that "the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons." Preamble to ABA Model R. of Prof'l Conduct ¶ 20; Preamble to Wis. R. of Prof'l Conduct for Att'ys ¶ 20; Preamble to Ill. R. of Prof'l Conduct ¶ 20. Thus, unless the violation prejudices one of the parties or undermines the court's ability to resolve the case justly, state bar authorities—not a court—should enforce the rules and sanction the attorney.

We therefore conclude that unethical conduct, not necessarily prejudicial to the class, nevertheless raises a "serious doubt" about the adequacy of class counsel when the misconduct jeopardizes the court's ability to reach a just and proper outcome in the case. Other courts have denied class certification on exactly this type of misconduct. For example, in *Wagner v. Lehman Brothers Kuhn Loeb Inc.*, the court found that counsel's attempts to bribe potential witnesses violated the professional rules and required denial of class certification. 646 F. Supp. 643, 659, 661-62 (N.D. Ill. 1986). And in *Kaplan v. Pomerantz*, the attorney failed to correct a witness's false deposition testimony despite knowing its falsity. 132 F.R.D. 504, 510-11 (N.D. Ill. 1990). Like the attorney's conduct in *Wagner*, the court found that the *Kaplan* attorney's ethical breach jeopardized the integrity of the judicial proceedings, warranting denial of class certification.

Although distressed by Kelly's dealings with Ms. Abraham and Anderson + Wanca's solicitation letter, we do

not believe those lapses in professionalism undermine the district court's ability to decide the case. Regarding the $5,000 check, McKnight never raised this alleged misconduct before the district court.

### 1. Anderson + Wanca's Interaction with Caroline Abraham

Defendant first attacks Anderson + Wanca's communications with Caroline Abraham as impermissible, materially misleading statements to a third party. *See* Ill. R. Prof'l Conduct 4.1; Wis. Sup. Ct. R. 20:4.1. McKnight also argues Anderson + Wanca violated Rule 4.3 by failing to disclose plaintiff's position adverse to Ms. Abraham's interests.

Although we do not join the assessment of plaintiff's counsel that "Mr. Kelly did nothing wrong in obtaining the B2B records," we do not believe his conduct and the alleged violations of Rules 4.1 and 4.3 require denial of class certification. As the district court explained, "plaintiff's attorneys did not breach a promise of confidentiality with the members of the class in *Cy's Crabhouse*, or with the members of the class in *Ashford Gear*, or with the potential members of this class. Instead, the breach was with a third party holding information regarding the illegal behavior of potential defendants." *Reliable Money Order*, 281 F.R.D. at 336. In short, the alleged misconduct, though it certainly raises concerns about the professionalism of plaintiff's counsel, does not raise serious doubts about their ability to represent the class faithfully: It does not prejudice the class

or create a conflict of interest. Nor do these alleged ethical lapses compromise the integrity of the lawsuit—plaintiff's counsel have not presented or suborned any false evidence related to the merits of the case. Thus, these ethical issues are unlike those in *Wagner* and *Kaplan*.

That is not to say, however, that attorneys at Anderson + Wanca did not breach their promise of confidentiality or did not violate Rules 4.1 and 4.3. The district court here concluded that Anderson + Wanca breached a promise made to Ms. Abraham.[9] Moreover, counsel's mailing of solicitation letters while contemporaneously asking defense counsel to treat the information as confidential does not speak well for the genuineness Kelly's

---

[9]  Other district courts have disagreed. *Beason*, 2012 WL 3205526, at *3 ("The Plaintiff has presented sufficient evidence to show that the [B2B] client information was not obtained under any confidentiality agreement."); *Ashford Gear III*, 2012 WL 3961307, at *2 ("The evidence submitted in support of the supplemental motion proves, however, that counsel breached no such agreement."). *But see Am. Copper & Brass*, 2012 WL 3027953, at *6 ("At the same time, Kelly still could have upheld the representation that he made to Abraham . . . . But, Kelly chose to make the representation to Abraham and he chose *not* to keep the information confidential."); *Cy's Crabhouse II*, 2010 WL 3327876, at *2 (rejecting argument that "the materials on the B2B hard drive were not confidential under the protective order because Abraham did not follow the process established in the protective order for designating materials confidential").

promises.[10] Our holding here reflects only the judgment that actions such as occurred here—which do not prejudice an attorney's client or undermine the integrity of judicial proceedings—do not mandate disqualification of counsel.

### 2.  The Solicitation Letter

Likewise, the solicitation letter does not require denial of class certification. Even assuming the letter misled, it neither prejudices the class nor undermines the outcome of the case. Next, McKnight makes much of the failure to register the letter as required by Wisconsin ethical rules and of Anderson + Wanca's failure to retain records of the recipients. This questionable conduct, too, does not cast doubt upon the attorneys' ability to act as a fiduciary of the class nor does it undermine the integrity of the judicial proceedings. In fact, the defects in counsel's solicitation letters are not unlike the "slight breach of ethics" in *Halverson*, which even the *Ashford Gear II* court recognized was insufficiently serious to require denial of class certification. *Ashford Gear II*, 662 F.3d at 918-19. *Halverson* noted that "pre-suit communication with prospective class members, where permis-

---

[10] Plaintiff's counsel asked defense counsel in the *Cy's Crabhouse* litigation to treat the B2B data as confidential on June 23, 2009. In the months leading up to that request, however, plaintiff's counsel had mailed solicitation letters and already had filed over forty putative class action lawsuits, all rooted in the B2B data.

sible, should be forthright and complete." 458 F.2d at 931. Counsel's solicitation letters in that case, however, did not discuss costs, drawing our disapproval but not our condemnation of plaintiff's motion for class certification. *Id.* at 931-32. Thus, the district court did not clearly err in certifying the class despite these alleged ethical violations.

### 3. Anthony Wanca's $5,000 Payment to Eric Ruben

Finally, McKnight faults one other aspect of the district court's analysis, arguing that the propriety of Wanca's $5,000 check, made payable to Ruben, "went unanalyzed by the magistrate judge." But the reason Judge Callahan did not analyze the propriety of the $5,000 payment is simple: McKnight never raised it before that court.[11] Thus, without placing the issue before the district court, defendant cannot argue error in leaving it unaddressed.

In any event, Reliable Money Order does not argue that defendant waived this argument and other district courts have made factual findings on this issue so we briefly address its merits. *See United States v. Rodriguez*,

---

[11] True, McKnight discussed the $5,000 check in its statement of facts but nothing in the argument makes the case that this check required denial of class certification. And mere inclusion of facts supporting a particular argument does not preserve that argument. *See Bob Willow Motors, Inc. v. Gen. Motors Corp.*, 872 F.2d 788, 795 (7th Cir. 1989) (argument waived when included only in summary of argument section of brief).

888 F.2d 519, 524 (7th Cir. 1989). Unlike defendant's other allegations of misconduct, this allegation, if proven, would require denial of class certification: witness payments contingent on particular testimony or a case outcome certainly undermine the integrity of judicial proceedings. *Wagner*, 646 F. Supp. at 659-60. Thus, without a doubt, if Wanca sent Ruben the check to influence Caroline Abraham's testimony or made payment of expenses contingent upon the outcome of the case, Wanca would have committed a serious breach of the ethical rules that would require denial of class certification. *See id.* Defendant, however, offers no evidence suggesting that Wanca's $5,000 payment came with such strings attached. *See Am. Copper & Brass*, 2012 WL 3027953, at *7; *Cy's Crabhouse II*, 2010 WL 3327876, at *6-7. And without that evidence the courts are powerless to sanction or discipline.

Instead, defendant relies solely on Ruben's testimony that he perceived the payment as a "payoff" of "questionable propriety." Even assuming this testimony provides adequate evidence that the payment was contingent on the outcome of the case or the content of the testimony, determining the propriety of the $5,000 check required balancing the credibility of Ruben's testimony against that of Wanca, who denied the allegations. The *Cy's Crabhouse* court engaged in just such a credibility determination and concluded that no evidence existed

to show improper motive for the payment.[12] Defendant does not now point to any evidence showing clear error in such a conclusion.[13]

## IV. Conclusion

In closing, we emphasize our concern over the challenged actions that Anderson + Wanca attorneys have taken while investigating this case and others. McKnight warns that our outcome will incentivize and reward overly aggressive and unethical attorney conduct. But this scenario of unpunished, inappropriate attorney action results only if the litigants and fellow members of the bar fail to refer legitimate instances of attorney misconduct to the relevant bar authority for investigation.

---

[12] McKnight does attack the credibility of Wanca's testimony by suggesting his later statements in open court directly contradicted the substance of his testimony. Though questionable whether the statements actually do contradict each other, the alleged misstatement does not relate to the $5,000 check. In any event, that suggestion alone does not establish clear error in concluding no improper motive existed.

[13] Plaintiff's counsel also suggests that, even if the misconduct of Anderson + Wanca would otherwise require denial of class certification, it does not in this case because Anderson + Wanca has partnered with Bock & Hatch—a firm untainted by the alleged misconduct—to prosecute this class action. Because we conclude that the misconduct of Anderson + Wanca attorneys does not require denial of class certification, we leave this question open.

But when an ethical breach neither prejudices an attorney's client nor undermines the integrity of the judicial proceedings, state bar authorities are generally better positioned to address the matter through disciplinary proceedings, rather than the courts through substantive sanction in the underlying lawsuit. Notwithstanding, when appropriate, a federal court retains the power to impose discipline or refer questionable conduct for further investigation. Therefore, we DENY plaintiff-appellee's motion to dismiss and AFFIRM the district court's certification of the class.